**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARILYN V. GRGEK,**

            **Plaintiff,**

**-vs-**                                               **Case No. 6:07-cv-1888-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's applications for a period of disability and disability insurance benefits and Supplemental Security Income under the Social Security Act. For the reasons set forth herein, it is **ORDERED** that the decision is **AFFIRMED**.[1]

### *PROCEDURAL HISTORY*

Plaintiff filed applications for a period of disability and Disability Insurance Benefits and for Supplemental Security Income on April 13, 2005, alleging a disability onset date of August 1, 2001 (R. 10). The applications were denied initially and on reconsideration. Plaintiff requested and received a hearing before an administrative law judge ("ALJ"), and the ALJ issued an unfavorable decision on April 27, 2007 (R. 10-18). Plaintiff requested Appeals Council review, which was denied on September 25, 2007 (R. 4-6), making the ALJ's decision the final decision of the Commissioner.

---

[1] Plaintiff requested oral argument. However, in light of the very capable briefing by both parties, the Court has concluded that oral argument would not be of substantial benefit in resolving the case.

This action for review timely followed (Doc. No. 1). The parties consented to the jurisdiction of the United States Magistrate Judge, and the issues have been fully briefed.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled "the reason being: burning shoulders + neck, two rupture [sic] disc [sic], 1 disc bulge, migraines, depression, feet burn, degenerated [sic] hip disease, carple [sic] tunnel (left and right), pain in both right and left leg, IBS colonitis: ischemic" (R. 7).

*Summary of Evidence Before the ALJ*

Plaintiff was 39 years old at the time of the alleged disability onset date, with a high school education and training and relevant work experience as a Certified Nurse Assistant and Massage Therapist (R. 16-17, 376-77).

The medical evidence relevant to the applications is well presented in the ALJ's detailed opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. By way of summary, the medical record indicates treatment for back and neck pain, and episodic vomiting and diarrhea.

In March 1995, well prior to the date of alleged onset, Plaintiff injured her back and was diagnosed with lumbar back strain (R. 151). MRI imaging revealed a small left posterior central disc herniation at the L4-5 level (R. 145). She was treated conservatively, refused surgery, and in January 1996, her orthopedist placed her at maximum medical improvement, with restrictions of no lifting over 20 pounds, and avoiding repetitive bending, prolonged walking and climbing. It was felt that she could benefit from vocational rehabilitation (R. 136).

In May 2001, Plaintiff was involved in an automobile accident and sustained acute cervical and lumbar strain (R. 15). An MRI showed that Plaintiff had a mild subligamentous annular disc

bulge at C5-6 (R. 343). She was treated conservatively, and her treating physician diagnosed her with cervical/lumbar radiculopathy at maximum medical improvement on May 9, 2002 (R. 358). Her physician placed her on the restriction of "light activities." *Id.* Plaintiff continued to treat with Coastal Neurology and Rehabilitation and Pain Management Center for cervical, thoracic, and lumbar radiculopathy, and myofascitis, cephalgia, depression, and hypersomnolence (R. 249-370). Plaintiff was treated conservatively, with prescribed medications, physical therapy, and injections. Plaintiff reported that her symptoms fluctuated at times, but "she is able to control her symptoms and maintain basic function and mobility on her current analgesic regimen" and had no side effects from the medications (R. 261).

On January 1, 2005, Plaintiff presented to the emergency room for a medication refill after she ran out of hydrocodone, due to her decision to increase her own dosage (R. 155). She was given 10 Lortab pills, and referred to her own doctor. Shortly thereafter, Plaintiff was admitted to the hospital due to problems with vomiting, nausea, diarrhea, and excessive fatigue (R.157-164). She was diagnosed with colitis ischemia, a depressive disorder, and spondylosis. Plaintiff's husband reported that Plaintiff had a problem with overuse of her narcotics and the physician felt that Plaintiff's symptoms were possibly related to narcotic withdrawal (R. 164). An MRI of the abdomen was unremarkable, but a colonoscopy showed marked colitis (R15). On follow-up visit with her gastroenterologist in March 2005, she was still having diarrhea, and it was suspected that her medications "may have contributed or caused this process." (R. 183-84). A repeat colonoscopy taken April 1, 2005, was normal (R.190).

The medical record also includes reports from consultative physical and mental health examinations. Dr. Carpenter performed a consultative physical exam in June of 2005, diagnosing the

Plaintiff with subjective chronic low back and posterior neck pain (R. 198-203). The evaluation showed that Plaintiff's grip strength and fine manipulation skills were normal, she had no motor or sensory deficits and she ambulated in normal fashion. The psychological examination was performed by Dr. Oately, who noted that Plaintiff had no inpatient or outpatient counseling and was treated for depression by her primary health care provider (R. 195-197). On examination, Plaintiff's speech was coherent and logical, no concentration, memory or orientation deficits were noted, and attention span and activity level were deemed appropriate. Plaintiff's attitude was pleasant and cooperative. She reported feeling anxious at times, and self esteem and mood was described as "nervous." (R. 195). Impression included pain disorder and a depressive disorder, and prognosis was fair. *Id.*

The record also includes reports from state agency non-examining consultants, and reports from Plaintiff, her mother and her husband, regarding her functional abilities and daily activities. Plaintiff appeared and testified at her hearing regarding her pain and limitations, and a Vocational Expert ("VE") testified, as well.

Based on the above, the ALJ found that Plaintiff had residuals of neck and back pain radiating to legs; irritable bowel syndrome, with nausea and vomiting; mild obesity; and depression, but that these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. 12, 13). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with no prolonged walking or standing, and sitting for 6 hours out of an 8-hour day with normal breaks; could lift 20 pounds occasionally and 10 pounds frequently (R. 13-14). The ALJ found that Plaintiff must avoid more than occasional bending and stooping, and that she had no significant mental limitations (R. 13-14). With this RFC, the ALJ found Plaintiff was unable to perform any of her past relevant work, but based on

testimony from the VE, the ALJ determined that there was other work existing in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was therefore not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (R. 16-18).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff raises several objections on review: 1) whether the ALJ's credibility determination is supported by substantial evidence; 2) whether the ALJ considered Plaintiff's impairments in combination: 3) whether the ALJ properly evaluated Plaintiff's allegations of pain; and 4) whether reliance on the Vocational Expert testimony was supported by substantial evidence.

### *Pain and Credibility*

The issues of the appropriate standard for reviewing allegations of pain and evaluating a claimant's credibility are intertwined. Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, Plaintiff testified that she suffered nausea, vomiting and diarrhea four to seven times a week, lasting sometimes all day (R. 15, 383-85). She takes no medications for it, as "I was taking Metamucil, but that wasn't helping at all" and when asked if there were other treatments available for it, she replied "No, there is nothing else." (R. 384).[2] Plaintiff also testified that due to pain, she sleeps 16 hours a day (R. 393). The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible" (R. 15). Plaintiff contends that this statement is insufficiently supported, due to the "substantial testimony, objective medical evidence of physical and mental health diagnoses, restrictions and treatment." (Brief at 18). Specifically, Plaintiff asserts that the ALJ failed to fully articulate the reasons that the testimony was not credible; failed to evaluate credibility "in conjunction wish [sic] all of the treatment Plaintiff has received;" and incorrectly found that Plaintiff did not take medications (Brief at 19).

---

[2] Plaintiff later testified that she had been taking medications prescribed by her gastroenterologist, but she cannot afford to see him anymore (R. 398), and she has not asked her primary care provider to prescribe something for her stomach problems (R. 397).

The ALJ reviewed the medical record at length, noting relatively benign findings out of proportion to the limitations alleged. The ALJ noted that Plaintiff complained of carpal tunnel syndrome, but that nerve conduction study tests showed normal left and right upper extremities, and electromyography of her left upper extremity was normal (R. 16, 347, 367). The ALJ noted that no treating or examining physician had suggested the presence of any impairment or combination of impairments of listing level severity (R. 13). The ALJ pointed out that the state agency examiners found Plaintiff capable of medium or light work and found no severe mental impairments (R. 14). Moreover, the ALJ found Plaintiff's testimony of debilitating nausea, vomiting and diarrhea to be "not fully credible," noting that "apparently the irritable bowel syndromes have been controlled in the past" (R. 16) and finding "incredulous" Plaintiff's testimony that she takes no medications for her stomach problems and hasn't asked her doctor for any medications for the stomach issues. The ALJ stated: "if the if the nausea, vomiting, diarrhea were so significantly limiting, and severe as she described at the hearing then most likely she would seek medical treatment and would attempt to pay for the medications in order to obtain relief from her severe symptoms as she described them at the hearing." (R. 16).

The ALJ also noted that Plaintiff cares for her personal needs, occasionally requires help from her husband, drives a car, watches TV, reads, shops, visits with friends and relatives, prepares simple meals, cares for the pets, waters the garden, and uses the phone (R. 16), and "[h]er ability to perform such a variety of daily activities tends to negate the credibility of her subjective complaints, especially the degree of pain she maintains that she experiences" (R. 16). The ALJ concluded noting: "one would not reasonably anticipate that a person who experiences substantial drowsiness and side effects from medications, the degree of pain alleged, or severe depression and anxiety, to be able to tolerate

-8-

the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities" (R. 16).

As is clear from the above, the ALJ articulated the basis for his credibility determination, and evaluated the complaints with respect to the medical record. The Court also finds that the ALJ's conclusions are supported by substantial evidence, as summarized above. Although Plaintiff complained of debilitating pain, treatment notes indicate Plaintiff frequently reported her average pain as being significantly less than debilitating. *See*, for example, R. 276, 278, 280 (pain was 2 on a scale of one to 10); R. 253, 260 (pain was a 3); R. 257, 263 (pain a four). The consultative examinations revealed no significant impairments, and no physician opined that she was incapable of any work.

As for Plaintiff's contention that the ALJ erred in relying on her lack of medications because she was financially unable to afford them, the Court finds that objection to be a distortion of the record. Plaintiff stated that she did not continue to see her gastroenterologist because of insurance issues, but that she continued to treat with her primary care doctor – the same doctor that was treating her for her depression, and her back and neck pain. Plaintiff testified that she had not even *asked* her treating physician for medication for her stomach, and treatment notes do not indicate that she complained to her treating physician of constant nausea and diarrhea. Moreover, Plaintiff did not hesitate to ask her treating physician for a prescription for Ritalin (R. 251, 254) and for Provigil (R. 274) indicating that financial reasons did not stop her from requesting medications she felt she needed. The Court finds no error in the ALJ's conclusions regarding credibility.

As the ALJ properly applied the pain standard and the credibility finding is supported by substantial evidence, it will not be disturbed.

***Impairments in Combination***

Plaintiff next contends that the ALJ erred in failing to consider Plaintiff's impairments in combination. The Court disagrees.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534. The Court finds that the ALJ did just that here.

It appears that Plaintiff's argument on this point is that the ALJ failed to consider the impairments in combination, because he did not accept the limitations of the impairments, as claimed by Plaintiff. As the Court finds the ALJ's conclusions regarding Plaintiff's impairments (including the rejection of Plaintiff's claims of disabling pain and limitations) to be supported by substantial evidence, this argument is unpersuasive.

### *Vocational Expert*

The final contention is that the ALJ failed to present a properly supported hypothetical to the VE that included all of Plaintiff's impairments. Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert

testimony, is unsupported by substantial evidence. *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). Plaintiff contends that the ALJ presented a hypothetical to the VE that failed to include Plaintiff's mental health restrictions in daily living (Brief at 24). The ALJ, however, did not find *any* mental health restrictions in formulating the RFC. This conclusion is supported by substantial evidence.

The record contains no physician-imposed vocational-related restrictions resulting from Plaintiff's mental health condition. Plaintiff's condition was controllable with medication, she never experienced any episodes of decompensation, she never was hospitalized due to her depression, and she and others reported that Plaintiff got along well with others, could follow instructions, handle her own finances, and was able to accomplish a wide variety of daily activities including conversing and visiting with friends and family, shopping several times a week, driving to doctor's appointments, watching television, light cooking and cleaning, and taking care of her personal needs. Her mental health evaluation revealed no concentration deficits, no memory deficits, she was fully oriented and cooperative and pleasant. An ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Commissioner of Social Security,* 363 F. 3d 1155, 1158 (11th Cir. 2004). The Court finds that the hypothetical was not deficient due to an absence of mental health limitations.

A final note is in order. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful

activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. While it is clear that Plaintiff has a variety of challenges and difficulties, the only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and is in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

## *CONCLUSION*

The decision of the Commissioner was supported by substantial evidence and was made in accordance with proper legal standards. As such, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 11, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record